## THADDEUS ADAMS *versus* EBEN G. MORSE.

A reservation, in the conveyance of a saw-mill, of "all the slabs made at said mill," is not valid, as against subsequent grantees.

Evidence that "there has always been a custom at a certain saw-mill and other mills in the neighborhood to leave the slabs as belonging to the mill, the owners of the logs never claiming them," does not establish a legal right in the mill as real estate to the slabs sawed.

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.

*A. W. Paine*, for plaintiff.

*J. A. Peters*, for defendant.

The opinion of the Court was drawn up by

KENT, J. — The plaintiff went on to a mill lot in possession of defendant, with his team and took a load of slabs, and was proceeding home with them, when the defendant forcibly took the slabs away, while the team was on the mill lot. The plaintiff claimed no right to the slabs or to the logs from which they were cut, or to the premises covered by the mill lot, except by virtue of what he claims to be a reservation in his deed of the lot and mill, executed thirty years ago, to one Rich, of five-eighths undivided. The descriptive part of that deed contained this clause, — "I, the said Adams, do hereby make a reservation for drawing water from the saw-mill dam for the use of my blacksmith shop at all times I may want, but not to the injury of the grist-mill; also, all the slabs made at said saw-mill, except what said Rich may want for his own particular use, together with a privilege of burning said slabs into coal on land belonging to said saw-mill on the easterly side of the stream; and I, said Adams, do agree to clear away all the slabs once in every year from the saw-mill."

After the record of this deed, Rich conveyed the premises granted to him, and, by several mesne conveyances, the title to the whole lot, including the other three-eighths, came to

Ellison, who leased the mill to the defendant, who, by the agreement or lease, was to have the slabs made by him. The particular slabs in controversy were sawed from logs of one Merrill, at this mill by defendant, and Merrill was to have one half of the slabs by agreement.

The plaintiff claims that this clause, in the deed given by him, secures to him an absolute property in all the slabs cut at that mill for all time, and whoever may be the owner of the mill, or of the logs from which they are cut. He claims this property by virtue of what he regards as a valid reservation in his deed, by which this right became attached to the real estate to run with the land forever.

In the discussions to be found in the books on this subject, nearly all fall back, for the definition of reservations and exceptions, to the language of Shepard, in his "Touchstone," p. 80. He there defines a reservation to be "a clause of a deed whereby the feofee doth reserve some *new thing* to himself *out of that which he granted before*. This doth differ from an *exception* which is ever a part of the thing granted, and of a thing *in esse* at the time, but this (reservation) is of a thing newly created or reserved *out of a thing demised*, that was not *in esse* before."

In these definitions, it will be perceived that both a reservation and an exception must be a part or arise out of that which is granted in the deed. The difference is only that an exception is something taken back out of the estate, then existing and clearly granted, whilst a reservation is of something issuing out of what is granted. A man grants a tract of land, described by metes and bounds, except one acre, also particularly described. This is an exception, for the acre never passes. Another man grants without any exception of any part, but reserves rent or some right to be exercised in relation to the estate, as to cut timber, or to have an easement therein. This is a reservation. Shepard further defines a reservation, — "that it must be of some other thing issuing or coming out of the thing granted, and not a part of the thing itself, nor of something issuing out of

another thing. If one grants land yielding for *rent*, money, corn, a horse, spurs, a rose, or any such like thing—this is a good reservation, but, if the reservation (not exception) be of the grass, or of the vesture of the land, or of a common or other profit to be taken out of the land, these reservations are void." The reason is given in Brooke's Abridgement, title Reservation, pl., 46, that " it is a reservation of a parcel of the thing granted, and is not like where a man leases his manor, except white acre, for there the acre is not leased, but here the land is leased, therefore the reservation of the herbage, vesture or profits of the land or the like is void." Lord COKE, Co. Lit., 47, a, says—"a man on his feoffment or conveyance cannot reserve to himself parcel of the annual profits themselves for that would be repugnant to the grant." *Borst* v. *Emple*, 1 Seld., 33.

In the case at bar, it is clear that the whole title of the grantor was conveyed without *any exception*. The question is—was the reservation of the slabs valid? The first objection to such a construction is—that the slabs, or the right to have all the slabs that might thereafter be sawed at that mill, did not pass as part of the grant, unless it was a legal right attached to the mill and going with it, without any special words of grant in the deed.

The grantor, the plaintiff, had no legal title to all the slabs which might afterwards be sawed at that mill, when he conveyed—unless a custom, hereafter to be alluded to, gave such right.

It was not reserved as *rent*. No words are used denoting any such intent, and we do not understand, from the able argument of the plaintiff's counsel, that he contends that it can be so regarded. It is not a technical rent, because it is not an annual sum of money or its equivalent. It is not payable yearly, or at fixed times. It is not certain, either in quantity or time, and there is no condition of forfeiture, or right of entry upon non-payment.

It rather resembles profits, income from use of the pro-

perty, and such reservation, as we have seen, is void, as re-pugnant to the grant.

The question has passed from the original parties to the grant, and we are not called upon to pass upon the question whether, as between such parties, and whilst the property remained in the grantee, and he was the owner of the logs, it would amount to a contract by which the plaintiff might claim the slabs. The question now is, whether it was such a reservation as attached to the real estate and run with the land, and transferred the title of personal property belonging to a stranger.

Is this a "reservation of the thing out of that which he granted before?" The production of slabs, by one mode of sawing logs, is not a thing issuing or coming out of the thing granted, within the meaning of the law. The grant was of land and water and a mill. It does not limit or prescribe the use by the grantee. He may use it to saw logs or clapboards, or shingles, or any kind of lumber, or he may never saw logs at all; or he may change the use of the water, to carry a grist-mill, or may use other machinery which makes no slabs.

It is true, that, in this case, the operations of the mill did result in the producing some slabs. But surely every thing that may be manufactured at a mill does not arise, come out of the thing granted, so as to become a part of the realty, or so as to be the subject of a grant or reservation in the conveyance of the estate.

Whatever does come out, may be — as rent, or timber on the land granted. A grist-mill, which derives its pay and its profits from toll in kind, as most of such mills do, may be granted, and a reservation of a portion of the toll, after it is separated, might be good, if not void as being a part of the profits. Why? Because it is a thing issuing out of the mill granted, and separated as the mill's portion. But a reservation of one half of all the corn or wheat brought to that mill to be ground, by strangers, would not be. If a man should give a deed of a cotton factory and land there-

with, it would hardly be contended that he might reserve every tenth yard of cotton cloth manufactured at that mill forever. So, of a fulling-mill or a tannery. If slabs may be reserved in a deed of a saw-mill, then every tenth board may be reserved, whoever may be the occupier. No man can thus attach another man's personal property to his realty, and either pass it or reserve it, simply on the ground that he, or his mill, have changed the form of it by manufacturing it.

In the case of *Wickham* v. *Hawkers*, 7 Mee. & Welsby, 63, cited and relied upon by the plaintiff, the decision was that a *reservation*, in terms, to come upon the land, and there hawk, hunt, fish and fowl, was *not* in law a reservation, but a new grant of a license, or liberty so to do.

So, the reservation of the best beast of the tenant in possession for the time being, rests upon the old feudal law in relation to heriots. By this law, by heriot service, or custom, the best beast on the land becomes the property of the lord of the manor. " A heriot goes with the reversion as well as rent, and the grantee of the reversion shall have it." Jacob's Law Dict., " Heriot." The beast thus becomes attached to the freehold. We have no such service or custom, and therefore, those cases in the English books, which recognize the reservation in a deed of a beast, are not applicable here.

This is not a *condition* upon which the estate is held, and for breach of which the grantor might enter and reinvest himself in the estate. The words used do not import a condition. There is no covenant running with the land. *Parish* v. *Whitney*, 3 Gray, 516.

The plaintiff offered to prove (if admissible) that there had always been a custom at this mill and also at other mills in the neighborhood, to leave the slabs as belonging to the mill, the owners of the logs never claiming the slabs, and that no such claim was ever before made at this mill. The only legitimate purpose to which such evidence could be applied in this case, would be to establish a legal right in the

mill as real estate, to the slabs thus sawed. But such right could not be established by a custom such as it is proposed to prove.

The question is not discussed in the arguments, and it is clear that it cannot avail the plaintiff. *Waters* v. *Lilley*, 4 Pick., 145 ; *Perley* v. *Langley*, 7 N. H., 233 ; *Freary* v. *Cook*, 14 Mass., 488. If the owners of logs at the mills or some of them in the vicinity have not heretofore claimed the slabs, it may have been because until recently they have been of no value and rather an incumbrance. The only custom alleged is that the slabs have been left as belonging to the mills. This may have arisen from various causes, and does not necessarily show that the *right* has been admitted — even if such tacit admission by custom could avail to establish the right. The custom, as stated, is not general. It is only of this mill and other mills (not all) in the *neighborhood*.

It is unnecessary to consider other points made in the defence, involving the questions — whether an owner of an undivided portion can make a reservation like this, — whether the neglect to clear away the slabs according to his agreement did not avoid the reservation, — whether this reservation was at all events to extend beyond the time that Rich, the grantee, held the premises, as it contemplated a right in him to select and hold all the slabs he might want for his own use, — whether the provision as to burning the slabs on the land does not imply that they are only reserved for the purpose of making coal for the blacksmith shop referred to in the first reservation of water, — and perhaps some other questions which might arise between the plaintiff and his immediate grantee.                    *Plaintiff nonsuit.*

CUTTING, DAVIS, DICKERSON and BARROWS, JJ., concurred.